**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
                                    :
JOEY'S PLACE LLC, *et al.*,         :
                                    :
                                    :
              Plaintiffs,           :
         v.                         :          Case No. 2:19-cv-20546-BRM-JAD
                                    :
                                    :
CITY OF CLIFTON, *et al.*,          :
                                    :          **OPINION**
              Defendants.           :
_____:


**MARTINOTTI, DISTRICT JUDGE**

      Before this Court is a Motion for Default Judgment filed by plaintiffs Joey's Place, LLC

t/a Bliss Lounge ("Bliss") and Glenn Franco ("Franco") (collectively, "Plaintiffs") against

defendant Martha's Vineyard, Inc. d/b/a Buco ("Buco") pursuant to Federal Rule of Civil

Procedure 55(b)(2). (ECF No. 11.) Also before this Court is a Motion for a Judgment on the

Pleadings[1] pursuant to Rule 12(c) filed by defendants City of Clifton ("Clifton"), Clifton Police

Department ("Clifton Police Department"), Clifton Mayor James Anzaldi ("Anzaldi"), and Clifton

City Manager Dominick Villano ("Villano") (collectively, "Moving Defendants").[2] (ECF No. 16.)

Plaintiffs oppose the Rule 12(c) Motion. (ECF No. 19.) Having reviewed the submissions filed in

_____

[1] The motion was filed as a "Motion to Dismiss pursuant to Rule 12(c)."

[2] Moving Defendants, together with Buco and defendants Joe Does 1–10, who are unidentified
United States citizens and residents of Passaic County, New Jersey (*see id.* ¶¶ 3–6, 8), are
hereinafter referred to as "Defendants."

connection with the motions and having declined to hold oral argument pursuant to Federal Rule

of Civil Procedure 78(b), for the reasons set forth below and for good cause appearing, Plaintiffs'

Motion for Default Judgment is **GRANTED** and Moving Defendants' Rule 12(c) Motion is

**GRANTED.**

### I.    BACKGROUND

For the purposes of Moving Defendants' Rule 12(c) Motion, the Court accepts the factual

allegations in the Complaint as true and draws all inferences in the light most favorable to

Plaintiffs. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Furthermore, the

Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re*

*Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig.*

*Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

This matter stems from Defendants' alleged discriminatory conduct towards Plaintiffs'

customers, which effectively caused Plaintiffs' business, Bliss, to cease operations. (*See generally*

ECF No. 1.) Specifically, Plaintiffs allege Defendants suspended Plaintiffs' entertainment license

based on a racial animus towards their African-American clientele. (*Id.* ¶¶ 12–13.) Bliss was a

New Jersey limited liability corporation which operated as a live entertainment establishment in

Clifton, New Jersey until July 7, 2017. (*Id.* ¶ 2.) Buco is a New Jersey limited liability corporation

which operated a restaurant as Bliss's subtenant until Bliss closed in 2017. (*Id.* ¶ 7.)

On July 21 2015, Bliss was granted an entertainment license for five nights per week. (*Id.*

¶ 16.)  On Tuesdays through Saturdays between 9 p.m. and 2:30 a.m., the license permitted DJs or

live music. (*Id.*) Entertainment was also permitted on Sunday nights if they were followed by

certain holidays, including but not limited to Halloween, Labor Day, and New Year's Eve. (*Id.*)

Additionally, security including off-duty police or sheriff's officers were required pursuant to the

License for all entertainment nights. (*See id.* ¶ 17.)

In September 2015, Franco purchased Bliss and modernized the establishment by playing contemporary hip-hop music. (*See id.* ¶ 18.) As a result, Bliss received a significant increase of minority patrons. (*Id.* ¶ 19.) By comparison, Plaintiffs note approximately 70 percent and 5 percent of Caucasians and African-Americans, respectively, constituted Clifton's demographics. (*Id.* ¶ 20.)

Starting in late 2015, Plaintiffs allege Clifton began to racially profile Bliss. (*See generally* ECF No. 1.) First, Buco was in dispute with Bliss regarding certain repairs, and Plaintiffs allege Buco falsely reported criminal activity occurring at Bliss during nights the establishment was closed. (*Id.* ¶ 21.) Despite Buco's 'frequent' and 'obvious' false reporting, Defendants refused to take any action against Buco.[3] (*Id.* ¶ 36.)  Plaintiffs contend the owners of Buco had "significant influence" with Clifton officials such as Mayor Anzaldi and City Manager Villano. (*Id.* ¶ 22.)

Second, Plaintiffs cites alleged comments made by Mayor Anzaldi and City Manager Villano regarding Bliss's new clientele. (*Id.* ¶ 23–29.) Specifically, during a fundraising event for the Boys and Girls Club in April 2016, Mayor Anzaldi asked Franco "what are you doing with 'these people?' The rappers and gangsters, it's not good." (*Id.* ¶ 24.) Mayor Anzaldi also asked "why are you bringing these people into our city" and mentioned "it's not good for the city." (*Id.* ¶ 25–26.) Furthermore, after Mayor Anzaldi and Franco's conversation, City Manager Villano purportedly appeared at Bliss on occasional, which Plaintiffs note never occurred before. (*Id.* ¶ 27.) In June 2016, City Manager Villano asked Franco "why are you bringing these people into our city? They are causing break-ins and theft in the Richfield Apartments[,]" although Plaintiffs

---

[3] On August 17, 2016, Buco called the Clifton Police Department complaining that all of the parking lot spots were taken; however, Plaintiffs claim there were plenty of space open. (*See id.* ¶ 38–39.) Additionally, on August 31, 2016, the police were called to respond to a riot during a private party at Bliss; nevertheless, Plaintiffs contend they found nothing of sort. (*Id.* ¶ 40.)

contend City Manager Villano's belief is unsubstantiated. (*Id.* ¶ 28–29.)

In May 2016, Clifton informed Franco his entertainment license for Bliss would not be renewed due to alleged violations of exceeding capacity. (*Id.* ¶ 30.) Plaintiffs deny exceeding capacity of 725 people and noted Bliss had never been cited for exceeding capacity during Franco's ownership. (*Id.* ¶ 31.) Nevertheless, Franco was able to renew Bliss's entertainment license being reduced to a capacity limit of 540 people, despite Bliss receiving less revenue. (*Id.* ¶¶ 32–33.) Clifton also required Bliss to submit permits for private events, despite Clifton never requiring Bliss or any other establishment to do so before. (*Id.* ¶ 35.) Additionally, the Clifton Fire Department notified Bliss that if the establishment did not comply with the newly reduced capacity limit, Bliss would be fined $5,000 per day. (*Id.* ¶ 34.)

On September 6, 2016, Clifton had a hearing regarding Bliss's renewal of its entertainment license and placed Bliss on probation for six months.[4] (*Id.* ¶ 42.)  Despite Bliss being the only establishment in Clifton that advertised events for 18–20-year-old persons, in October 2016, Clifton passed a new resolution banning 18–20-year-old persons from frequenting places that serve alcohol.  (*Id.* ¶ 47.) Bliss served its probation without any incidents; however, when Plaintiffs requested for Clifton to reinstate the full use of entertainment license on March 7, 2017, Buco objected, thereby causing Clifton to extend the probation for another thirty days with increased security measures. (*See id.* ¶¶ 48–49.)

On March 11, 2017, Bliss intended to host a hip-hop show; however, the entertainer did not perform, causing the crowd outside of Bliss to increase and three arrested were eventually

---

[4] Bliss's probation included closing its doors by 1 a.m. and suspending three nights of entertainment. (*Id.* ¶ 43–44.)

made. (*Id.* ¶¶ 50–56.) On March 27, 2017, Clifton filed an Order to Show Cause[5] as to why Bliss should not have its entertainment revoked, and after a hearing on April 11, 2017, Clifton revoked Bliss's entertainment license, which in effect closed Bliss. (*Id.* ¶¶ 58, 61–62, 66.) "Defendants succeeded" in opposing Plaintiffs' efforts to stay revocation of Bliss's entertainment license in the New Jersey Superior Court, Passaic County, Law Division, and Appellate Division. (*Id.* ¶ 65.)[6]

On November 20, 2019, Plaintiffs filed a four-count Complaint against Defendants asserting claims for violations of (i) 42 U.S.C. §§ 1983 and 1985 (Equal Protection); (ii) 42 U.S.C. §§ 1981, 1982, 1983, and 1985 (Retaliation); (iii) 42 U.S.C. §§ 1981, 1982, 1983, and 1985 (Due Process); and (iv) the New Jersey Law Against Discrimination, N.J. Stat. Ann. § 10:5–12 ("NJLAD"). (ECF No. 1 ¶¶ 70–83.) On January 6, 2020, Moving Defendants filed an Answer to the Complaint, raising, *inter alia*, statute of limitations, *res judicata*, collateral estoppel, and the entire controversy doctrine as defenses. (ECF No. 6.) They also asserted a counterclaim against Plaintiffs for attorneys fees (*id.* at 13) and a general crossclaim against "any [c]o-[d]efendants" for contributions and indemnification" (*id.* at 13-14). On March 9, 2020, Plaintiffs filed a Motion for Default Judgment against Buco pursuant to Federal Rule of Civil Procedure 55(b)(2). (ECF No. 11.) On April 28, 2020, Moving Defendants filed a Motion to Dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(c). (ECF No. 16.) On June 1, 2020, Plaintiffs filed an Opposition to the Motion to Dismiss. (ECF No. 19.) On June 8, 2020, Defendants filed a Reply

---

[5] This was presumably filed in New Jersey Superior Court, Passaic County, Law Division, although it is not clear from the Complaint.

[6] While not specifically alleged in Plaintiffs' Complaint, the appellate process appears to have take place through Joey's Place, LLC t/a Bliss Lounge filing of its own Verified Complaint in Lieu of a Prerogative Writ against Clifton, which was denied on November 3, 2017. (ECF No. 16-1, Exs. B-D.) Bliss filed an untimely appeal which was therefore dismissed. (*Id.*, Ex. E.) Petition for certification was denied by the Supreme Court. (*Id.*, Ex. F.) Because the state court litigation is referenced in Plaintiffs' complaint and these documents are public record, the Court may consider them.

to the Opposition to the Motion to Dismiss. (ECF No. 20.)

## II.   LEGAL STANDARDS

### A.  Federal Rule of Civil Procedure 55(b)(2)

A default judgment may be entered "against a properly served defendant who fails to file a timely responsive pleading." *Louisiana Counseling & Family Servs., Inc. v. Makrygialos*, LLC, 543 F. Supp. 2d 359, 364 (D.N.J. 2008) (citing Fed. R. Civ. Pro. 55(b)(2); *Anchorage Assoc. v. Virgin Is. Bd. of Tax Rev.*, 922 F.2d 168, 177 n.9 (3d Cir. 1990)). The judgment must be entered by the court, rather than the clerk, where the amount is not sum certain or cannot be made certain by computation. Fed. R. Civ. P. 55(b).

Entry of default judgment is within the discretion of the district court, although cases should "be disposed of on the merits whenever practicable." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)); see *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000); *Louisiana Counseling & Family Servs.*, 543 F. Supp. 2d at 364. To determine the appropriateness of the entry of a default judgment, the Court may conduct a hearing when, "to enter or effectuate judgment, it needs to . . . determine the amount of damages [or] establish the truth of any allegation by evidence." Fed. R. Civ. P. 55(b).

Generally, courts treat all pleadings and allegations of the plaintiff as true on a motion for default judgment. *See Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990). However, the Court is not required to accept Plaintiffs' conclusions of law and, therefore, "it remains for the [C]ourt to consider whether the unchallenged facts constitute a legitimate cause of action" against Defendants. *Directv, Inc. v. Asher*, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (quoting Charles A. Wright, Arthur R. Miller & Mary Kay Kane, 10A Federal Practice and Procedure §

6

2688, at 58–59, 63 (3d ed. 1998)); *accord Louisiana Counseling & Family Servs.*, 543 F. Supp. 2d at 364; *Comcast Cable Commc'ns v. Bowers*, No. 06-1664, 2007 WL 1557510, at *2 (D.N.J. May 25, 2007).

### B.  Federal Rule of Civil Procedure 12(c)

Federal Rule of Civil Procedure 12(c) provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Pursuant to Rule 12(c), the movant for judgment on the pleadings must establish: (1) that no material issue of fact remains to be resolved; and (2) the entitlement to judgment as a matter of law. *See Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (citing *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290–91 (3d Cir. 1988). In resolving a motion made pursuant to Rule 12(c), the Court must view the facts in the pleadings and the inferences therefrom in the light most favorable to the non-movant. See *Rosenau*, 539 F.3d at 221.

"[A] motion to dismiss for failure to state a claim under Rule 12(c) is identical to one filed under Rule 12(b)(6), except that Rule 12(c) allows for the motion to be filed after the filing of an answer, while Rule 12(b)(6) allows for the motion to be made in lieu of an answer." *Wellness Pub. V. Barefoot*, 2008 WL 108889, at *6 (D.N.J. Jan. 9, 2008); *see also Turbe v. Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991).

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citations omitted). However, the plaintiff's "obligation to provide the 'grounds' of his

'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286, 106 S.Ct. 2932. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557, 127 S.Ct. 1955).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679, 129 S.Ct. 1937 (quoting Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and

unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286, 106 S.Ct. 2932.

### III.   DECISION

#### A.  Plaintiffs' Motion for Default Judgment

Under the Federal Rules of Civil Procedure, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). "[E]ntry of default by the Clerk under Federal Rule of Civil Procedure 55(a) constitutes a general prerequisite for a subsequent default judgment under Rule 55(b)." *Husain v. Casino Control Comm'n*, 265 Fed.Appx. 130, 133 (3d Cir. 2008). Rule 55 "provides for entry of default judgment against a defendant who has not appeared and who is neither a minor nor an incompetent person." *Deutsche Bank Nat'l Trust Co. v. Strunz*, No. 12-1678, 2013 WL 122644, at *1 (M.D. Pa. Jan. 9, 2013).

Here, Plaintiffs correctly argue Rule 55(b)(2) has been satisfied because despite the Complaint being filed and Buco being served, Buco failed to appear in this matter. (ECF No. 11-1 at 2.) Additionally, it is undisputed that Buco is a New Jersey corporation, neither being a child or an incompetent person. (*Id.*; ECF No. 1 ¶ 7.) Therefore, the Court finds service of the Summons and Complaint was properly effectuated with respect to Buco, default was duly noted by the Clerk of the Court against Buco for its failure to plead or otherwise defend in this action, and the unchallenged facts constitute a legitimate cause of action. Accordingly, Plaintiffs' Motion for Default Judgment is **GRANTED**.

### B.  Moving Defendants' Rule 12(c) Motion to Dismiss

### 1. Statute of Limitations

Moving Defendants argue Plaintiffs' claims against them should be dismissed as time-barred under the applicable statute of limitations. (ECF No. 16-2 at 12–16.) Typically, "the Federal Rules of Civil Procedure require a defendant to plead an affirmative defense, like a statute of limitations defense, in the answer, not in a motion to dismiss." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). However, in this circuit, a defendant may succeed on a motion to dismiss on the basis of statute of limitations, "if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Id.* (quoting *Robinson v. Johnson*, 313 F.3d 128, 134–35 (3d Cir. 2002)) (quotations omitted).

Both parties seemingly agree that the relevant statutes of limitations as to all of Plaintiffs' claims is two years. "In New Jersey, claims brought under 42 U.S.C. §§ 1981, 1982, 1983 and 1985 are subject to a two-year statute of limitations." *Hawkins v. Feder*, No. 07-4005, 2008 WL 3192973, *2 (D.N.J. Aug. 5, 2008). Similarly, claims under the NJLAD are subject to a two-year statute of limitations. *Alexander v. Seton Hall Univ.*, 204 N.J. 9, 228 (2010). Therefore, because Plaintiffs brought their Complaint on November 20, 2019, if their claims did not accrue later than November 20, 2017, they will be barred by the applicable statutes of limitations.

### a.  Accrual Date

Federal law governs a federal cause of action's accrual date. *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009). Additionally, "[t]he New Jersey Supreme Court has adopted the federal framework for determining when an NJLAD claim accrues." *Serrano v. Marcal Paper Mills, LLC*, No. 11-03501, 2012 U.S. Dist. LEXIS 10742, at *11, 2012 WL 266424 (D.N.J. Jan. 30, 2012) (citing *Roa v. Roa*, 200 N.J. 555, 568 (2010)). Under federal law, a claim accrues when the facts

10

which support the claim reasonably should have become known to the plaintiff. *Sameric Corp. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998); *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 507 (3d Cir. 2006) (quoting *Mathews v. Kidder Peabody & Co.*, 260 F.3d 239, 252 (3d Cir. 2001)); *see also Large v. County of Montgomery*, 307 F. App'x 606, 606 (3d Cir. 2009). "The determination of the time at which a claim accrues is an objective inquiry; [courts] ask not what the plaintiff actually knew but what a reasonable person should have known." *Kach*, 589 F.3d at 634. Importantly, accrual is not tied to whether the potential claimant knew or should have known that the injury constitutes a legal wrong. *Giles v. City of Philadelphia*, 542 F. App'x 121, 123 (3d Cir. 2013) (citing *Sandutch v. Muroski*, 684 F.2d 252, 254 (3d Cir. 1982)). Rather, "a cause of action accrues when the fact of injury and its connection to the defendant would be recognized by a reasonable person." *Kriss v. Fayette County*, 827 F. Supp. 2d 477, 484 (W.D. Pa. 2011) *aff'd*, 504 Fed.Appx. 182 (3d Cir. 2012). Accordingly, "[a]s a general matter, a cause of action accrues at the time of the last event necessary to complete the tort, usually at the time the plaintiff suffers an injury." *Kach*, 589 F.3d at 634.

Here, under the facts alleged, all of Plaintiffs' claims accrued more than two years before Plaintiffs filed the Complaint. On April 11, 2017, at the Municipal Council hearing, Clifton revoked Plaintiffs' entertainment license. (ECF No. 1 ¶¶ 61–62.) On April 18, 2017, the Municipal Council formalized its decision from the April 11, 2017 hearing by passing a written resolution. (ECF No. 16-2 at 12.) Moving Defendants allege "the Municipal Council did not take any action against Plaintiffs after April 18, 2017. (*Id.* at 14.) The Court agrees and finds the relevant statute of limitations for Plaintiffs' claims began to accrue on April 18, 2017. Accordingly, because Plaintiffs filed their Complaint on November 20, 2019, they failed to file their Complaint within the two-year statute of limitations timeframe.

**b. Continuing Violations Doctrine**

Plaintiffs argue their claims seeking relief for violations occurring before November 20, 2017 are timely, nonetheless, based on the continuing violations doctrine. (ECF No. 19 at 3.) "The continuing violations doctrine is . . . an 'equitable exception to the timely filing requirement.'" *Bennett v. Susquehanna Cty. Children & Youth Servs.*, 592 F. App'x 81, 84 (3d Cir. 2014) (quoting *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001)). "The continuing violations doctrine is an equitable exception to a strict application of a statute of limitations where the conduct complained of consists of a pattern that has only become cognizable as illegal over time." *Foster v. Morris*, 208 F. App'x 174, 177 (3d Cir. 2006) (*Cowell*, 263 F.3d at 292). "When a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." *Foster*, 208 F. App'x at 177–78 (quoting *Brenner v. United Bhd. of Carpenters & Joiners*, 927 F.2d 1283, 1295 (3d Cir. 1991) (marks omitted)). "Courts consider two factors in determining whether to apply the continuing violations doctrine: (1) whether the violations were related in subject matter and (2) whether the acts were recurring." *Bennett*, 592 F. App'x at 84 (citing *Cowell*, 263 F.3d at 292 and *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 166 (3d Cir. 2013)).

However, the Third Circuit has cautioned "the continuing violations doctrine is not a substitute for a plaintiff's 'awareness of and duty to assert his/her rights' in a timely fashion." *Bennett*, 592 F. App'x at 85 (quoting *Cowell*, 263 F.3d at 295). As such, "the doctrine 'does not apply when plaintiffs are aware of the injury at the time it occurred.'" *Bennett*, 592 F. App'x at 85 (quoting *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 417 n.6 (3d Cir. 2003)); *see also Muhammad*, 483 F. App'x at 762 ("The District Court correctly

12

reasoned that . . . the continuing violations doctrine did not apply because [the plaintiff] should have been aware of each act's negative impact at the time it occurred."); *Zied v. Barnhart*, 418 F. App'x 109, 114 (3d Cir. 2011) ("[A]s explained by the District Court, the continuing violations doctrine for extending a statute of limitation does not apply to injuries that occurred before the filing period if the plaintiff was aware, as Zied was, of those injuries at the time they occurred.").

Here, the continuing violation doctrine does not apply to Plaintiffs' time-barred claims. Regarding the first factor of the continuing violations doctrine, the Court rejects Plaintiffs' argument that Clifton extended its discriminatory conduct by defending against Plaintiffs' suit in state court. (ECF No. 19 at 4.) In other words, Plaintiffs incorrectly conflate both acts of Clifton revoking Plaintiffs' entertainment license and defending against Plaintiffs' suit in state court as being a single type of discrimination. Additionally, after the Municipal Council finalized its revocation of Plaintiffs' entertainment license on April 18, 2017, the record does not suggest Clifton took any further action against Plaintiffs, besides defending itself in state court. Therefore, both factors of the continuing violations doctrine favor Moving Defendants; therefore, the exception does not apply.

As such, Moving Defendants' Rule 12(c) Motion to Dismiss Plaintiffs' claims as time-barred is **GRANTED**.

### 2. Entire Controversy Doctrine and *Res Judicata*

Because the claims are barred by the statute of limitations, and because Plaintiff will be granted an opportunity to amend the complaint, the Court need not address the merits of these arguments.[7]

---

[7] Having not reached these arguments, Defendants are not barred from raising these defenses in response to the amended complaint, should Plaintiffs choose to so file.

**IV.    CONCLUSION**

For the reasons set forth above, Plaintiffs' Motion for Default Judgment is **GRANTED**.

Additionally, Moving Defendants' Motion to Dismiss is **GRANTED** and Plaintiffs' Complaint is

**DISMISSED WITHOUT PREJUDICE** as set forth herein and in the accompanying order**.**


**Date: December 31, 2020**                    */s/ Brian R. Martinotti*_____
                                              **HON. BRIAN R. MARTINOTTI**
                                              **UNITED STATES DISTRICT JUDGE**