<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JOEY'S PLACE, LLC t/a BLISS NIGHTCLUB, GLENN FRANCO, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF CLIFTON, CLIFTON POLICE DEPARTMENT, JAMES ANZALDI, DOMINICK VILLANO, MARTHA'S VINEYARD, INC. d/b/a BUCO, JOHN DOES 1-10, <br><br> Defendants. | Case No. 2:19-cv-20546 (BRM) (JSA) <br><br> **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is a Motion to Dismiss filed by Defendants City of Clifton ("Clifton"), Clifton Police Department ("Clifton PD"), Mayor of Clifton, James Anzaldi ("Mayor Anzaldi"), and City Manager of Clifton, Dominick Villano's ("City Manager Villano") (collectively, "Moving Defendants") Motion to Dismiss Plaintiffs Joey's Place, LLC t/a Bliss Nightclub ("Bliss") and Glenn Franco's ("Franco") (together, "Plaintiffs") Amended Complaint (ECF No. 24) for Failure to State a Claim pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 27). Plaintiffs opposed the Motion to Dismiss. (ECF No. 30.) Moving Defendants filed a Reply in support of the Motion to Dismiss. (ECF No 33.) Having reviewed the submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth herein and for good cause shown, Moving

Defendants' Motion to Dismiss is **DENIED**.[1]

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

For the purposes of the Motion to Dismiss, the Court accepts the factual allegations in the Amended Complaint as true and draws all inferences in the light most favorable to Plaintiffs. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

The Court previously summarized the facts underlying this dispute in a December 31, 2020 Opinion granting without prejudice Plaintiffs' Motion for Default Judgment against Buco and granting without prejudice Moving Defendants' Motion for Judgment on the Pleadings. (*See* ECF Nos. 21–22.) The Court therefore includes an abbreviated statement of the factual and procedural history based on the Amended Complaint (ECF No. 24) and to the extent such background is relevant to the instant motion.

This matter stems from Moving Defendants' alleged discriminatory conduct which forced Plaintiffs to close down Bliss, a live entertainment establishment in Clifton, New Jersey. (ECF No. 24 ¶ 11.) Specifically, Plaintiffs allege Moving Defendants were "driven by racial animus towards African-Americans," "did not want African-Americans to enter their community," and therefore "took actions, including but not limited to the suspension of [Franco's] entertainment license, to force [Franco] to close his doors." (*Id*. ¶¶ 12–13.)

On July 21, 2015, Bliss was granted an entertainment license for five nights per week. (*Id*. ¶ 16.) On Tuesdays through Saturdays between 9 p.m. and 2:30 a.m., the license permitted

---

[1] Martha's Vineyard Inc. d/b/a Buco ("Buco") did not join the Motion to Dismiss.

DJs or live music to play at Bliss. (*Id.*) In September 2015, Franco purchased Bliss and "responding to the change in times and musical tastes, began playing hip-hop music." (*Id.* ¶ 18.) After the change in music, Bliss began to attract "a different clientele," including specifically, "significant numbers of minority patrons." (*Id.* ¶ 19.)[2]

Starting in late 2015, Plaintiffs allege Clifton began to "racially profile Bliss." (*See id.* ¶¶ 21–29.) First, Bliss "found itself in a dispute" with Buco, a restaurant sub-tenant of Bliss until Bliss shut its doors in 2017. (*Id.* ¶¶ 7, 21.) Buco began to take issue regarding certain repairs, and called in false police reports, "including reports of criminal activity occurring at Bliss on nights that it was closed." (*Id.* ¶ 21.) The owners of Buco had "significant influence with [Mayor] Anzaldi, [City Manager] Villano, and other Clifton officials." (*Id.* ¶ 22.) Plaintiffs recall Mayor Anzaldi asked Franco "what are you doing with these people? The rappers and gangsters, it's not good," (*id.* ¶ 24), and other comments by Mayor Anzaldi including "why are you bringing these people into our city" and "it's not good for the city" (*Id.* ¶¶ 25–26). Thereafter, City Manager Villano began appearing at Bliss "from time and time," and confronted Franco by saying "why are you bringing these people into our city? They are causing break-ins and theft in the Richfield Apartments." (*Id.* ¶¶ 27–28.)[3]

In May 2016, Franco was informed that his entertainment license would not be renewed because of alleged violations regarding capacity at Bliss. (*Id.* ¶ 30.) The capacity maximum at Bliss "was always 725 people," and had never been an issue during Franco's ownership. (*Id.* ¶ 31.) In order to renew his entertainment license, Franco agreed to reduce capacity at Bliss to 540 people.

---

[2] Plaintiffs contend "Bliss' clientele stands in stark contrast to the more homogenous population of Clifton, which is almost 70% Caucasian and only 5% African-American." (*Id.* ¶ 20.)

[3] Plaintiff contends City Manager Villano's claims concerning break-ins were "totally unfounded." (*Id.* ¶ 29.)

(*Id.* ¶ 32.) If Bliss did not comply with the reduced capacity, Bliss would be fined $5,000 per day by the Clifton Fire Department. (*Id.* ¶ 34.)

Also, during this time, Buco made several "false calls" to Clifton PD. (*Id.* ¶ 36.) For example, on August 31, 2016, Clifton PD was called concerning a "riot" that took place at a private party at Bliss. (*Id.* ¶ 40.) As a result of the call, eight police departments responded to the call and "found nothing of the sort." (*Id.*)[4] Thereafter, on September 6, 2016, after a hearing regarding Bliss's renewal of its entertainment license, Clifton put Bliss on probation for six months. (*Id.* ¶ 42.) At the hearing, "the Chief of Police stated that due to Bliss's clientele, it should be on probation and should close its doors at 1 a.m." (*Id.* ¶ 43.) Bliss agreed to the probation and served its six-month probation "without any incidents to speak of." (*Id.* ¶ 46.)

On March 7, 2017, Bliss went before the City of Clifton Council, to request reinstatement of the full use of its entertainment license. (*Id.* ¶ 48.) Buco objected to the renewal of Bliss's license and Clifton "responded by demanding increased security measures (despite the fact that Bliss had just completed a six-month probation without incident) and extended Bliss' probation for an additional 30 days." (*Id.* ¶ 49.)

On March 11, 2017, Bliss was scheduled to host a live hip-hop event but because Bliss was still on probation, its performers had to be off stage by 1 a.m. (*Id.* ¶ 51.) The scheduled hip-hop entertainers arrived at 11:55 p.m.; however, they were detained by Clifton PD for nearly forty-five minutes because the smell of marijuana was detected. (*Id.* ¶¶ 53–54.) By the time the performers were released, it was 12:55 a.m., which meant the performers could not perform. (*Id.* ¶ 55.) Ultimately, the event was cancelled, and three arrests were made. (*Id.* ¶ 56.)

---

[4] Plaintiffs contend "a certain celebrity" posted on social media he/she would attend a party at Bliss which resulted in "more patrons arriving than could be accommodated" and the police pepper-spraying the crowd. (*Id.* ¶ 41.)

4

On March 27, 2017, Clifton filed an Order to Show Cause[5] as to why Bliss should not have its entertainment license "revoked, suspended, or otherwise limited." (*Id.* ¶ 58.) Clifton "based its Order to Show Cause on the police report of the [March 11, 2017] incident, which was dated March 12, 2017[,] and ostensibly written by Officer Gene Hayes." (*Id.* ¶ 59.)

Later, on November 20, 2019, Franco discovered that another police report existed, written by Officer Robert Tillie, "that had been altered by someone in the Clifton Police Department." (*Id.* ¶ 60.) This second report, which was never furnished to Plaintiffs, "was significantly different from the one presented to Plaintiffs during the proceedings to revoke Plaintiffs' entertainment license." (*Id.* ¶ 61.) Plaintiffs contend the report written by Officer Tillie is "significant because the other reports do not identify him as an officer with relevant information," and further, "Officer Tillie's report names a second officer, a Lieutenant Sawyer, who was not identified in Officer Hayes' report." (*Id.* ¶¶ 62–63.) Franco also discovered around November 20, 2019, that many Clifton PD officers "possessed information that would have been helpful to Plaintiffs" but were "pressured to keep quiet" by Clifton's Chief of Police and other Clifton officials (*Id.* ¶ 64.) Among those "pressured to keep quiet" were Officer Tillie and Lieutenant Sawyer. (*Id.* ¶ 65.) Had Plaintiffs received Officer Tillie's report, "they would have had an opportunity to review and call additional witnesses and present additional evidence" at the April 11, 2017 Order to Show Cause hearing ("OTSC Hearing"). (*Id.* ¶ 66.) Plaintiffs contend they did not receive any evidence that Clifton intended to rely upon until one business day before the OTSC Hearing. (*Id.* ¶ 67.) "Even then, much of the evidence that Clifton ultimately used at the hearing, was not turned over to Bliss, nor did Clifton turn over all relevant evidence such as Officer Tillie's report." (*Id.*) Despite Bliss's objections to the OTSC Hearing on grounds of insufficient time, Clifton overruled the objections

---

[5] It is not clear from the Amended Complaint where the Order to Show Cause was filed.

and conducted the OTSC Hearing on April 11, 2017, which Plaintiffs argue "could charitably be described as a kangaroo court." (*Id.* ¶ 69.) After the OTSC Hearing, Plaintiffs contend Clifton revoked Bliss's entertainment license for "pretextual" reasons; the "true motivation" was "racial animus of Defendants toward Plaintiff's clientele." (*Id.* ¶ 71.) Ultimately, Bliss was forced to shut its doors. (*Id.* ¶ 74.)

On November 20, 2019, Plaintiffs filed a four-count Complaint against Clifton, Clifton PD, Mayor Anzaldi, City Manager Villano, Buco, and John Does 1-10 asserting claims for violations of (i) 42 U.S.C. §§ 1983 and 1985 (Equal Protection); (ii) 42 U.S.C. §§ 1981, 1982, 1983, and 1985 (Retaliation); (iii) 42 U.S.C. §§ 1981, 1982, 1983, and 1985 (Due Process); and (iv) the New Jersey Law Against Discrimination, N.J. Stat. Ann. § 10:5-12 ("NJLAD"). (ECF No. 1.) On January 6, 2020, Moving Defendants filed an Answer to the Complaint, raising, *inter alia*, statute of limitations, *res judicata*, collateral estoppel, and the entire controversy doctrine as defenses. (ECF No. 6.) Moving Defendants also asserted a counterclaim against Plaintiffs for attorneys' fees (*id.* at 13) and a general crossclaim against "any [c]o-[d]efendants" for contributions and indemnification (*id.* at 13–14). On March 9, 2020, Plaintiffs filed a Motion for Default Judgment against Buco pursuant to Federal Rule of Civil Procedure 55(b)(2). (ECF No. 11.) On April 28, 2020, Moving Defendants filed a Motion for a Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c). (ECF No. 16.) On June 1, 2020, Plaintiffs opposed the 12(c) Motion. (ECF No. 19.) On June 8, 2020, Moving Defendants filed a reply. (ECF No. 20.) On December 31, 2020, the Court granted without prejudice Plaintiffs' Motion for Default Judgment against Buco and Moving Defendants' Motion for a Judgment on the Pleadings. (*See* ECF Nos. 21–22.) In granting Moving Defendants' Motion for a Judgment on the Pleadings, the Court found (1) both parties "seemingly agree that the relevant statutes of limitations as to all of Plaintiffs' claims is

two years," (2) under the facts alleged, "Plaintiffs' claims began to accrue on April 18, 2017," and because "Plaintiffs filed their Complaint on November 20, 2019, they failed to file their Complaint within the two-year statute of limitations timeframe," and (3) the continuing violations doctrine did not apply to Plaintiffs' time-barred claims. (ECF No. 21 at 10–13.)

On January 1, 2021, Plaintiffs filed a four-count Amended Complaint against Moving Defendants asserting claims for violations of (i) 42 U.S.C. §§ 1983 and 1985 (Equal Protection); (ii) 42 U.S.C. §§ 1981, 1982, 1983, and 1985 (Retaliation); (iii) 42 U.S.C. §§ 1981, 1982, 1983, and 1985 (Due Process); and (iv) the NJLAD. (ECF No. 24.) The Amended Complaint is nearly identical to the original complaint except for the following additional allegations:

> 59. The City of Clifton based its Order to Show Cause on the police report of the incident, which was dated March 12, 2017 and ostensibly written by Officer Gene Hayes.
>
> 60. However, on November 20, 2019, Franco discovered that another police report existed, written by Officer Robert Tillie, that had been altered by someone in the Clifton Police Department.
>
> 61. This second report, which was never furnished to Plaintiffs, was significantly different from the one presented to Plaintiffs during the proceedings to revoke Plaintiffs' entertainment license.
>
> 62. The report written by Officer Tillie is significant because the other reports do not identify him as an officer with relevant information.
>
> 63. Furthermore, Officer Tillie's report names a second officer, a Lieutenant Sawyer, who was not identified in Officer Hayes' report.
>
> 64. Franco also discovered around that same time that many officers that were witnesses to this incident as well as other unlawful conduct by Defendants, and possessed information that would have been helpful to Plaintiffs' in their ongoing proceedings regarding the entertainment license, but were pressured to keep quiet by, among others, the Clifton's Chief of Police and other officials in the City of Clifton.
>
> 65. Among those pressured to keep quiet were Officer Tillie and Lieutenant Sawyer.

> 66. Had Plaintiffs received Officer Tillie's report, they would have had an opportunity to interview and call additional witnesses and present additional evidence during the revocation proceeding.
>
> 67. However, Bliss' counsel did not receive any evidence that the Clifton intended to rely upon until April 7, 2019, one business day before the hearing. Even then, much of the evidence that Clifton ultimately used at the hearing, was not turned over to Bliss, nor did Clifton turn over all relevant evidence such as Officer Tillie's report.

(*Id.* ¶¶ 59–67.)

On February 10, 2021, Moving Defendants filed a Motion to Dismiss for Failure to State a Claim pursuant to Rule 12(b)(6), arguing, generally, notwithstanding Plaintiffs' new allegations, Plaintiffs' claims are time-barred and the continuing violations doctrine does not apply. (ECF No. 27.) On March 22, 2021, Plaintiffs filed an Opposition arguing, generally, Plaintiffs' new allegations establish a continuing violation. (ECF No. 30.) On April 12, 2021, Moving Defendants filed a Reply. (ECF No. 33.)

## II. LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to [the plaintiff]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

8

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint to allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "[D]etailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pled; it must include "further factual enhancement[s]" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor are they compelled to accept "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286.

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to

9

dismiss [into one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

### III. DECISION

Moving Defendants argue Plaintiffs' claims must be dismissed because (1) Plaintiffs' claims are time-barred and (2) Plaintiffs' new allegations do not invoke the continuing violations doctrine. (*See* ECF No. 27-2 at 10.) Plaintiffs appear to concede their claims are time-barred but contend the continuing violations doctrine applies to the new allegations. (ECF No. 30 at 8–9.) The Court find Plaintiffs can rely on the continuing violations doctrine.

As the Court noted in its previous Opinion, "the relevant statutes of limitations as to all of Plaintiffs' claims is two years. 'In New Jersey, claims brought under 42 U.S.C. §§ 1981, 1982, 1983 and 1985 are subject to a two-year statute of limitations.' Similarly, claims under the NJLAD are subject to a two-year statute of limitations." (ECF No. 21 at 10) (citing both *Hawkins v. Feder*, Civ. A. No. 07-4005, 2008 WL 3192973, at *2 (D.N.J. Aug. 5, 2008) and *Alexander v. Seton Hall. Univ.*, 8 A.3d 198, 203 (N.J. 2010)). Also, as the Court previously explained, the exception to the statute of limitations is the "continuing violation doctrine" which "is an equitable exception to a strict application of a statute of limitations where the conduct complained of consists of a pattern that has only become cognizable as illegal over time." (*Id.* at 12) (quoting *Foster v. Morris*, 208 F. App'x 174, 177 (3d Cir. 2006)). In considering whether to apply the continuing violations doctrine, the Court considers two factors: "(1) whether the violations were related in subject matter and (2) whether the acts were recurring." (*Id.*) (citing *Bennett v. Susquehanna Cty. Children & Youth Servs.*, 592 F. App'x 81, 84 (3d Cir. 2014)).

10

Here, Plaintiffs' claims, if they do not fall within the continuing violations doctrine, are time-barred. Indeed, shortly after the OTSC Hearing, Clifton formalized its decision by officially revoking Bliss's entertainment license. (*See* ECF No. 24 ¶¶ 69–70, Clifton "conducted a hearing on April 11, 2017," and "[a]fter the hearing . . . Clifton revoked Bliss' entertainment license.").) Therefore, Plaintiffs' claims began to accrue shortly after April 11, 2017.[6] But because Plaintiffs filed their Complaint on November 20, 2019, they failed to file their Complaint within the applicable two-year timeframe. Consequently, Plaintiffs' causes of action are barred unless Moving Defendants' conduct constitutes a continuing violation.

New Jersey recognizes the continuing violations doctrine, which is "an equitable exception to the statute of limitations." *Roa v. Roa*, 985 A.2d 1225, 1231 (N.J. 2010). "The doctrine provides that when an individual experiences a 'continual, cumulative pattern of tortious conduct, the statute of limitations does not begin to run until the wrongful action ceases.'" *Id.* (quoting *Wilson v. Wal-Mart Stores*, 729 A.2d 1006, 1010 (N.J. 1999)); *Ashley v. Metelow*, Civ. A. No. 15-3153, 2018 WL 4462413, at *5 (D.N.J. Sept. 18, 2018). The continuing violations doctrine "applies when a defendant's conduct is part of a continuing practice." *Randall v. City of Phila. Law Dep't*, 919 F.3d 196, 198 (3d Cir. 2019). "Under a continuing violation theory, if the defendant engaged in a continuing course of conduct and plaintiff's action is timely as to any act in that course of conduct, plaintiff may be permitted to litigate violations that are part of the course of conduct." *Carr v.*

---

[6] Accrual is not tied to whether the potential claimant knew or should have known that the injury constitutes a legal wrong. *Giles v. City of Phila.*, 542 F. App'x 121, 123 (3d Cir. 2013) (citing *Sandutch v. Muroski*, 684 F.2d 252, 254 (3d Cir. 1982)). Rather, "a cause of action accrues when the fact of injury and its connection to the defendant would be recognized by a reasonable person." *Kriss v. Fayette Cty.*, 827 F. Supp. 2d 477, 484 (W.D. Pa. 2011), *aff'd*, 504 F. App'x 182 (3d Cir. 2012). Accordingly, "[a]s a general matter, a cause of action accrues at the time of the last event necessary to complete the tort, usually at the time the plaintiff suffers an injury." *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009).

*Dewey Beach*, 730 F. Supp. 591, 603 (D. Del. 1990) (citing *Van Heest v. McNeilab, Inc.*, 624 F. Supp. 891, 896 (D. Del. 1985)).

However, the Third Circuit has cautioned "the continuing violations doctrine is not a substitute for a plaintiff's 'awareness of and duty to assert his/her rights' in a timely fashion." *Bennett*, 592 F. App'x at 85 (quoting *Cowell*, 263 F.3d at 295). As such, "the doctrine 'does not apply when plaintiffs are aware of the injury at the time it occurred.'" *Id.* (quoting *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 417 n.6 (3d Cir. 2003)); *see also Muhammad v. Ct. of Common Pleas of Allegheny Cty., Pa.*, 483 F. App'x 759, 762 (3d Cir. 2012) ("The District Court correctly reasoned . . . the continuing violations doctrine did not apply because [the plaintiff] should have been aware of each act's negative impact at the time it occurred."); *Zied v. Barnhart*, 418 F. App'x 109, 114 (3d Cir. 2011) ("[A]s explained by the District Court, the continuing violations doctrine for extending a statute of limitation does not apply to injuries that occurred before the filing period if the plaintiff was aware, as Zied was, of those injuries at the time they occurred.").

In reviewing the Amended Complaint, the Court finds there are enough facts to plausibly infer that the continuing violations doctrine may be applicable to Plaintiffs' claims. Because the Court does not make findings of fact on a Rule 12(b)(6) motion, the Court is required to, at this stage of the proceedings, assume the veracity of Plaintiffs' well-pleaded allegations. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). Plaintiffs allege Moving Defendants have continuously discriminated against them by, among other things, pressuring many Clifton PD officers, including Officer Tillie and Lieutenant Sawyer, to "keep quiet" from speaking about Moving Defendants' alleged discriminatory conduct and/or revealing any information that would have been "helpful" to Plaintiffs in advance of the OTSC Hearing. (ECF No. 24 ¶¶ 64–66.) At

least one such act of alleged discrimination occurred within the two-year statute of limitations. (*Id.* ¶ 64 (alleging that around November 20, 2019, Plaintiffs discovered Clifton PD officers were "pressured to keep quiet" about "unlawful conduct by Defendants" in advance of April 11, 2017 OTSC Hearing)). Plaintiffs, therefore, have sufficiently alleged that Moving Defendants' conduct is part of a continuing practice.[7] *Curtis*, 2020 WL 7828806, at *5. As such, dismissing Plaintiffs' claims under Rule 12(b)(6) on the face of the Amended Complaint would be inappropriate.[8]

The Court, however, notes it is possible that discovery may further narrow Plaintiffs' claims or undercut the allegation that a pattern of discriminatory conduct extended into the limitations period. *See Fried v. JP Morgan Chase & Co.*, 850 F.3d 590, 604 (3d Cir. 2017) (noting that the applicability of the statute of limitations "usually" involves questions of fact); *Deering v. Hackensack Bd. of Educ.*, Civ. A. No. 203890, 2021 WL 508608, at *5 (D.N.J. Feb. 11, 2021). For now, the Court is satisfied that the Amended Complaint sufficiently alleges a continuing

---

[7] The Court rejects Moving Defendants' contention that Plaintiffs could have filed the additional allegations that formed the basis of the Amended Complaint in their initial lawsuit filed on November 20, 2019. Plaintiffs allege they knew "around" November 20, 2019, that Moving Defendants "pressured to keep quiet" Clifton PD officers from revealing any "helpful" information to Plaintiffs in "ongoing proceedings regarding the entertainment license," not that Plaintiffs knew those facts on or before November 20, 2019.

[8] Additionally, the Court denies Moving Defendants' Motion because the Court's analysis is impeded by a lack of specific information concerning the alleged events, much of which is largely within the control of Moving Defendants. (*See, e.g.*, ECF No. 24 ¶ 61, "This second report, which was never furnished to Plaintiffs, was significantly different from the one presented to Plaintiffs during the proceedings to revoke Plaintiffs' entertainment license.").); *Wiley v. City of Newark*, No. 16-2530, 2017 WL 4678202, at *1 (D.N.J. Oct. 16, 2017) (where the court's analysis was "hampered" by "a lack of specific information of the [alleged] events, much of which [wa]s largely within the control of [D]efendants," the court would "err on the side of permitting the[] claims to go forward to discovery regarding the identities of the individuals putatively responsible, their relationships and roles in relation to the events, [and] whether it can be attributed to the city"); *Curtis v. New Jersey State Police*, Civ. A. No. 1921164, 2020 WL 7828806, at *5 (D.N.J. Dec. 30, 2020) (where specific information concerning the allegations was largely within the control of the defendants, the court would reserve judgment on the issue of continuing violations and deny defendants' motion to dismiss).

practice, consisting of discriminatory conduct, that extends into the limitations period. Plaintiffs' claims, as alleged, are therefore timely.

### IV.   CONCLUSION

For the reasons set forth above, Moving Defendants' Motion to Dismiss is **DENIED**.

Dated: September 14, 2021

*/s/ Brian R. Martinotti*
**BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**